134 So.2d 198

**STATE of Alabama**

**v.**

**James A. PAYTON et al.**

**5 Div. 714.**

Supreme Court of Alabama.

Nov. 2, 1961.

MacDonald Gallion, Atty. Gen., and J. J. Mullins, Sp. Asst. Atty. Gen., for appellant.

Omar L. Reynolds and Reynolds & Reynolds, Clanton, for appellees.

COLEMAN, Justice.

This is an appeal by the State from a judgment of the circuit court awarding compensation to the appellees for a right

of way which the State seeks to acquire, by condemnation, over and across a strip of land owned by appellees in Chilton County.

The first insistence of appellant is that the court erred in instructing the jury that the State would be authorized to fence the right of way sought to be acquired in this proceeding. The remaining land of defendants abuts on that right of way.

The condemned strip is twenty feet wide and 387 feet long, being about one-fifth of an acre. It lies along the south side of defendants' land and abuts on an existing public road. The entire tract owned by defendants contains about nineteen acres. The strip is to be used to widen the right of way of the existing road.

The existing road runs approximately east and west. It will cross, on a different level, a controlled access interstate highway which will run generally north and south from Montgomery to Birmingham. From the maps and testimony, we understand that a "ramp" will lead from the existing east-west road onto the new north-south interstate highway, forming a part of the intersection plan which is known as an interchange.

It appears that the property owners abutting on the north-south interstate highway will not have the right of access from their land to the abutting north-south highway, and also that property owners abutting on the ramp a short distance past the land of defendants will not have access onto the ramp. We do not understand, however, that access from the remaining land of defendants to the abutting east-west road will be controlled or denied. We have carefully examined the application for condemnation filed by the State and do not find in it any prayer that the access rights to the remaining land of defendants be condemned.

Neither party reserved any exception to the oral charge which the court gave before the jury retired. Shortly thereafter the jury returned to the courtroom where the following colloquy took place:

"The Jury: Your Honor, the jury has a question we would like to have cleared up and that is this: (indicating on the map) This being a part of the right of way, this ramp here, will the State of Alabama have a right at any time to completely fence this off to where there will be no ingress and egress on this property?

"The Court: I will say this: When the State of Alabama gets the property, they are authorized to fence it, fence it if they want to or make it a limited access road, but you will go further than that and consider what it is built for, according to the contentions, its contribution to the Cloverleaf going in there; and you can consider the nature of the condemnation proceedings, the whole project, and the purpose of it as to whether or not it will ever be fenced. Of course the main road, there was evidence that it would be fenced to keep people off. You can consider whether or not it would be practical to fence it off, or whether or not they would ever have an occasion to fence this part, the access part of it. I would say this, consider the nature of that part, what it is built for and what it is being used for, as to whether or not, the State of Alabama would ever fence it. I would say for all useful purposes for the record, whether or not they would ever do it or whether or not it would be desirable to fence it now, or at any time in the future will be up to them, the State of Alabama. As far as I know, there is no law that says that they can't fence it off if they want to.

"Mr. Mullins: Exceptions, your Honor, because of the fact that the symbols there indicate that that part was not to be fenced; there is no claim to condemn that piece of property there on the edge of the proceedings, that is, which shows that this particular road is not to be fenced. We object to the charge that they have a right to fence this land.

"The Court: I will go further to include all of the symbols as to what the intentions of the State of Alabama is about it.

"Mr. Mullins: Exceptions.

"(Whereupon, the jury retired again to the jury room for their deliberation.)"

Appellees argue that the statements by Mr. Mullins set out above are not sufficient to preserve for review an exception to the oral charge.

■ The proper way to reserve an exception to part of the oral charge is for the exceptor to select and recite what the court said, or state the substance of what the court said, and thus specifically bring to the attention of the trial court and this court the matter and ruling of which complaint is made. Pollard v. Rogers, 234 Ala. 92, 96, 173 So. 881.

■ In the instant case, the jury had inquired whether the State would have the right to fence off the right of way sought to be acquired "to where there will be no ingress and egress on this property." The Court had stated: " * * * When the State of Alabama gets the property, they are authorized to fence it * * *." Counsel had stated: "Exceptions, your Honor * * * We object to the charge that they have a right to fence this land."

We are of opinion that the exception was reserved with sufficient particularity to present for review the correctness of the instruction that the State would acquire in the instant proceeding the right to fence the right of way and thereby deprive the abutting landowner of the right of access to the right of way.

The court erred in instructing the jury that the State would have the right to fence the right of way sought to be condemned in the instant proceeding.

■ The owner of land abutting on a street or highway has a private right in such street or highway, distinct from that of the public, which cannot be taken or materially interfered with without just compensation. Access to the highway is one of those private rights. Blount County v. McPherson, 268 Ala. 133, 105 So.2d 117; St. Clair County v. Bukacek, 272 Ala. 323, 131 So.2d 683. The legislature recognized these access rights by enacting Act No. 104, 1956 Acts, Special Session, Vol. 1, page 148; which appears in Code of Alabama Recompiled 1958, Title 23, § 141 et seq. The act provides in Section 5 (§ 145, Title 23) " * * * the highway authorities of the state * * * may acquire * * * property and property rights for controlled access facilities * * * including rights of access * * * by * * * condemnation in the same manner as such authorities * * * may be authorized by law to acquire * * * property rights in connection with highways and streets * * *."

The manner provided by law for condemnation is set out in Title 19, § 1 et seq., Code 1940. § 3, Title 19, provides: "The application * * * must state with certainty * * * the uses or purposes for which the land is to be taken, and the interest or easement therein to be acquired. * * *" § 24, Title 19, provides that "The order of condemnation * * * shall vest in the applicant the easement proposed to be acquired for the uses and purposes stated in the application and for no other uses or purposes. * * *" With reference to § 24, Title 19 (§ 7499, Code 1923), this court has said:

" * * * Nor will it be denied that the interest in land sought to be condemned for a particular use, whether easement or fee, must be condemned for the uses and purposes stated in the application. Section 7499 of the Code so provides. * * *" Downing v. State, 214 Ala. 199, 202, 107 So. 80, 82.

■ As mentioned above, the instant application does not state that access rights are to be acquired. In the absence of such

a statement in the application, access rights will not be acquired. It results then that the State will not, in the instant proceeding, acquire the right to fence the land herein condemned. The court erred in instructing the jury to the contrary. See: Alabama Power Company v. Keystone Lime Company, 191 Ala. 58, 67 So. 833; Alabama Power Company v. Sides, 212 Ala. 687, 103 So. 859.

The second insistence of appellant is that the court erred in overruling objection to a question which defendants propounded, on cross-examination, to a witness called by the plaintiff. The witness was one of the commissioners appointed by the probate court to assess the damages to the lands involved in the instant case. The question called on the witness to state the amount of such assessment.

Overruling the objection was not error. Alabama Power Company v. Henson, 237 Ala. 561, 187 So. 718.

Reversed and remanded.

LIVINGSTON, C. J., and SIMPSON and GOODWYN, JJ., concur.